**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**UNITED STATES OF AMERICA**                                   **PLAINTIFF**

**V.**                           **CASE NO. 5:23-CR-50016**

**MARQUEZ BEASLEY**                                          **DEFENDANT**

**OPINION AND ORDER**

Presently before the Court is Marquez Beasley's *pro se* Motion to Vacate under 28 U.S.C. § 2255 (Doc. 75) and the Government's Response in Opposition (Doc. 77). For the reasons stated below, the Motion is **DENIED**. As Mr. Beasley's motion is resolvable by reviewing the record only, there is no need to conduct an evidentiary hearing. *See United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835–36 (8th Cir. 2005) (finding that an evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief).

**I.  BACKGROUND**

On March 8, 2023, Mr. Beasley was indicted on one count of possession of methamphetamine with intent to distribute and one count of being a felon in possession of a firearm. (Doc. 1). On March 30, he was arrested and detained. A few weeks later, on April 21, his retained counsel Gregory Klebanoff filed a motion claiming Mr. Beasley may be "cognitively impaired" because he suffered "three (3) traumatic brain injuries" in the past. (Doc. 16, p. 4). Therefore, Mr. Klebanoff requested Court funding so that he could retain a private psychologist to perform a mental competency examination. *See id.* On May 17, Magistrate Judge Christy Comstock granted Mr. Klebanoff's motion and authorized him to retain Dr. Stephen P. Nichols to conduct the examination. *See* Doc. 24.

1

On the day of the examination, May 30, the U.S. Marshals Service transported Mr. Beasley from the Washington County Detention Center to Dr. Nichols's office in Fayetteville, Arkansas. The following day, May 31, Mr. Klebanoff filed a motion for competency hearing (Doc. 26), advising the Court that Dr. Nichols was concerned that Mr. Beasley might be suffering from a mental defect that was "more profound than counsel suspected." *Id.* As a result, Mr. Klebanoff requested that Mr. Beasley be transported to the Bureau of Prisons for a more thorough mental competency examination pursuant to 18 U.S.C. § 4241. The motion was once again referred to Magistrate Judge Comstock, who granted it and ordered Mr. Beasley to be committed to the custody of the Bureau of Prisons for the examination. *See* Doc. 28.

Mr. Beasley was evaluated at the Bureau of Prisons from July 11 to August 10, 2023. On August 30, Dr. Letitia A. Armstrong, Licensed Psychologist, submitted her comprehensive eleven-page report to the Court, which included summaries of testing and observation of Mr. Beasley and interviews with Mr. Klebanoff and Mr. Beasley's wife. *See* Doc. 30. Dr. Armstrong concluded that even though Mr. Beasley had suffered head trauma in the past, he retained average intellectual functioning and had no acute or persistent cognitive impairment. *Id.* at p. 9. She found that he "exaggerate[d] the severity of his impairment and intentionally misrepresent[ed] his abilities" and "self-reported memory problems and cognitive deficits" that were not confirmed by any objective test or evaluation of his behavior. *Id.* In other words, Mr. Beasley was malingering: "feigning symptomology, or exaggerating, with the goal of being found incompetent to stand trial" and "delaying the proceedings indefinitely, using incompetency as a potential plea-bargaining tool, serving time in a hospital rather than a prison, and/or hoping for an

2

insanity defense." *Id.* at p. 10. Dr. Armstrong affirmed that Mr. Beasley understood the criminal charges against him, was able to consult with his counsel concerning his case, and showed no influence of psychosis related to decision-making. *Id.* at p. 12. Accordingly, she advised that any "lack of cooperation" on Mr. Beasley's part was an "attempt to feign or exaggerate severe mental illness." *Id.*

The Court received Dr. Armstrong's report and forwarded it to Mr. Klebanoff with instructions to consider whether he wished to challenge her findings. He did not. The Court then issued an order on September 18, 2023, finding Mr. Beasley competent to stand trial. *See* Doc. 31. Shortly thereafter, on October 16, Mr. Klebanoff advised that Mr. Beasley wished to plead guilty and forwarded a written plea agreement to the Court. Magistrate Judge Comstock convened the plea hearing on October 17; however, during the course of the hearing, Mr. Beasley professed that he could not remember who Mr. Klebanoff was or whether they had spoken prior to the hearing. Magistrate Judge Comstock had little option but to terminate the hearing.

The undersigned reconvened the plea hearing on October 31 and engaged in a lengthy and thorough colloquy with Mr. Beasley regarding his intent to plead guilty and his understanding of the charges against him. The Court also read highlights of Dr. Armstrong's psychological report into the record. *See* Doc. 67, pp. 10–22. After all that, the Court made findings on the record that Mr. Beasley understood the charges against him, was competent to assist in his defense, knew which charge he was proposing to plead guilty to, and was competent to stand trial—or to waive his right to stand trial and plead guilty. *Id.* at p. 22. Mr. Beasley stated affirmatively that Mr. Klebanoff had reviewed the plea agreement with him, explained its terms, and answered any and all questions

Mr. Beasley may have had. *Id.* at pp. 26–27. Accordingly, the Court adjudicated Mr. Beasley guilty of possessing with intent to distribute methamphetamine. *See* Doc. 38. He was advised that the gun charge could be considered by the Court as relevant conduct. *See id.* at pp. 30–31.

At the sentencing hearing on June 6, 2024, the Court asked Mr. Beasley if he understood the purpose of the hearing and whether he was fully satisfied with Mr. Klebanoff's legal services. *See* Doc. 68, p. 3. He answered, "Yes, sir." *Id.* After calculating the guideline sentencing range, the Court entertained oral argument on what sentence the Court should impose. The Government's attorney emphasized the fact that Mr. Beasley had been feigning a mental defect, which delayed the proceedings substantially. Further, the Government's counsel read from the transcript of a jail call between Mr. Beasley and his wife just after the aborted plea hearing on October 17 before Magistrate Judge Comstock. During the call, Mr. Beasley informed his wife that he had tricked the Court into believing he was incompetent, and to keep up appearances, he would be speaking to her on the recorded jail line as if he "ha[d] no sense at all." *Id.* at pp. 13–14. The Government concluded its remarks by recommending a guideline sentence.

Next, Mr. Klebanoff spoke on Mr. Beasley's behalf. He emphasized Mr. Beasley's solid work history notwithstanding his prior serious head injuries, and his perseverance in the wake of adversity. *See id.* pp. 18–19. Mr. Beasley's wife and children also appeared at the sentencing hearing and spoke on his behalf. *See id.* at pp. 15–18. Mr. Beasley then offered the Court a brief, though coherent, statement of remorse for his actions. *See id.* at p. 19.

The Court's sentence was 235 months in prison—the bottom of the guideline

sentencing range of 235 to 240 months. In selecting this sentence, the Court reasoned that Mr. Beasley was accountable for one kilogram of methamphetamine, which was a very significant quantity, and Mr. Beasley possessed a firearm—a loaded Taurus 9 millimeter—though he had been prohibited from doing so due to his felony record. *See* Doc. 54 & 55. Mr. Beasley's criminal history was also very aggravating. He was deemed a career offender based on a cocaine possession conviction from 2016, *see* Doc. 45 ¶ 87, and a marijuana conviction from 2015, *see id.* ¶ 85. In total he had amassed fourteen criminal history points, with convictions going back twenty years. One of those points was assessed because he committed the instant criminal conduct while on state parole. *See id.* ¶ 90.

Mr. Beasley appealed, but the Eighth Circuit affirmed this Court's sentence in full, including its guideline calculation. *See* Doc. 70-1. In particular, the Court of Appeals stated that it conducted a "careful review" of the record and concluded "that the plea was knowing and voluntary and that the district court did not impose a substantively unreasonable sentence." *Id.* at p. 2.

## II. DISCUSSION

In Mr. Beasley's Motion to Vacate, he first argues that Mr. Klebanoff was ineffective "by not pursuing an incompetence defense due to [Mr. Beasley's] two traumatic brain injuries." (Doc. 75, p. 4). To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was so seriously deficient that counsel was "not functioning as the 'counsel' guaranteed by the Sixth Amendment" and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, the defendant "must prove a reasonable probability exists

5

that, but for counsel's errors, the results of the proceeding would have been different." *DeRoo v. United States* 223 F.3d 919, 925 (8th Cir. 2000).

First, there is no merit to Mr. Beasley's argument that Mr. Klebanoff failed to pursue an incompetence defense. In fact, Mr. Klebanoff succeeded in obtaining a private mental evaluation conducted by Dr. Nichols and after that, a more comprehensive, long-term evaluation at the Bureau of Prisons. The Bureau of Prisons' doctor concluded that Mr. Beasley was pretending to be incompetent to avoid trial and was fully capable of assisting with his defense. The Court tested this conclusion by engaging in its own independent questioning of Mr. Beasley during both the plea hearing and the sentencing hearing. It was clear that Mr. Beasley understood the nature of the proceedings and was pleading guilty because he was guilty. Accordingly, Mr. Klebanoff's decision to abandon the incompetence defense was not deficient, as there was no objective indication that Mr. Beasley was actually suffering from a mental illness. *See Slocum v. Kelley*, 854 F.3d 524, 533 (8th Cir. 2017) (dismissing similar claim under *Strickland*).

Next, Mr. Beasley maintains that Mr. Klebanoff was incompetent for failing to object to the career-offender enhancement that was applied at sentencing. Mr. Beasley focuses on his breaking-and-entering conviction from 2005 and argues that this conviction could not have formed the basis for the enhancement. *See* Doc. 45, ¶ 56. However, the breaking-and-entering conviction was not one of the predicate offenses underlying the enhancement. *See id.* ¶ 36. Aside from that, Mr. Beasley never explains why he believes the enhancement was misapplied in the first place. This argument is therefore meritless. *See Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014) ("Counsel is not ineffective for failing to pursue [an argument] that he reasonably believes would be

6

futile.").

Finally, Mr. Beasley claims that Mr. Klebanoff should have objected to the Court's calculation of Mr. Beasley's criminal history, including the two-point enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) and the Court's consideration of the firearm as relevant conduct. First, these claims are procedurally barred because they could have been raised on direct appeal. *See United States v. Ward,* 55 F.3d 412, 413 (8th Cir.1995) ("Collateral proceedings under 28 U.S.C. § 2255 cannot be made to do service for an appeal."). Second, even if the claims were not barred, they are meritless— so Mr. Klebanoff had no duty to raise them. Though Mr. Beasley suggests his criminal history points were incorrectly calculated because the Court ignored a new amendment to the United States Sentencing Guidelines, the amendment he references actually went into effect the year before he was sentenced—and he received its benefit. Next, Mr. Beasley complains that Mr. Klebanoff never advised him that "he could still be found guilty" for being a felon in possession. *See* Doc. 75, p. 19. But that's not what happened. Instead, the Court considered the firearm as relevant conduct in determining an appropriate sentence—which Mr. Beasley was informed would happen both in his written plea agreement, *see* Doc. 38, ¶ 16, and at the plea hearing, *see* Doc. 67, pp. 30–31.

### III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Marquez Beasley's *pro se* Motion to Vacate under 28 U.S.C. § 2255 (Doc. 75) is **DENIED**. No certificate of appealability shall issue, as Mr. Beasley has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED** on this 3rd day of August, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE